# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| MARY QUINLEY, ON BEHALF OF A.D.Q., | ) )  |
| Plaintiff, | ) Case No. 1:04CV00072 ) |
| | ) **OPINION** |
| v. | ) |
| | ) By:  James P. Jones |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,** | ) Chief United States District Judge ) ) ) |
| Defendant. | |

In this child's social security case, I affirm the final decision of the Commissioner.

## *I.  Background.*

The plaintiff has filed this action on behalf of her minor daughter, A.D.Q., challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") benefits under title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381-1383f (West 2003 & Supp. 2005) ("Act").  Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

Beginning in 1993, the child received SSI benefits due to asthma. These benefits were terminated in 1999 due to a medical improvement. Although the plaintiff appealed the cessation decision, an administrative law judge ("ALJ") found that there was a medical improvement and upheld the decision to terminate benefits on June 30, 2000. Two years later, on April 10, 2002, the plaintiff filed the current application for child's SSI on the child's behalf, alleging disability beginning February 1, 1994, due to a learning disability. The claim was denied initially and on reconsideration, and a request for a hearing was timely filed. The plaintiff received a hearing before an ALJ on October 22, 2003. By decision dated December 30, 2003, the ALJ found that the child was not disabled within the meaning of the Act. The Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is now ripe for decision.

## *II. Facts.*

A.D.Q., who was born on April 25, 1993, was ten years old and in the fifth grade at the time of the ALJ's decision. The plaintiff claims disability based on a learning disorder and slow learning that began on February 1, 1994.

In determining whether A.D.Q. is eligible for benefits, the ALJ reviewed the child's medical records, including those from Robert W. Lester, psychologist; Barbara Goodman, family nurse practitioner; Dorothy Holian, Psy.D.; and Walden Davis, nurse practitioner. The ALJ also considered A.D.Q.'s report cards and records from her teachers. In addition, the ALJ heard testimony from A.D.Q., A.D.Q.'s mother, and Brian E. Warren, D. Psy., a clinical psychologist who appeared as a medical expert witness. Based upon the evidence, the ALJ determined that A.D.Q.'s learning disorders, attention deficit and hyperactivity disorder ("ADHD"), and history of asthma are severe, but concluded that these impairments do not meet, equal, or functionally equal any listed impairment.

On May 16, 2001, A.D.Q. underwent an educational evaluation by a licensed school psychologist, Robert W. Lester, M.A., to determine her academic needs. (R. 154-59.) Psychologist Lester concluded that the child experienced mild difficulty

performing at a level consistent with her peers on academic tasks and identified teaching methods that would benefit the child. (R. 157.) Psychologist Lester also found that the child, who was in the second grade at the time of the evaluation, had reading and spelling skills at the first grade level and math skills at the second grade level. (R. 154.)

Progress notes from the office of Dr. Briggs, the child's family physician, indicate routine medical care including a school physical; a diagnosis of ADHD; and treatment for tonsillitis, upper respiratory infection, strep, herpes simplex, chicken pox, and gastritis. (R. 17.) Barabara Goodman, a family nurse practitioner, with the office of the child's family physician, prescribed the child Ritalin to treat her ADHD, but this prescription was terminated in February of 2002 because she did not take the medication consistently. (R. 165, 168.) An Individualized Education Program ("IEP") for the period of May 2001 through May 2002 reflects that A.D.Q.'s communication skills were adequate, she was very quiet and got along well with peers, she had adequate self-help skills, and she came to school well-groomed each day. (R. 129.) She was given special education to improve her reading skills. (*Id.*)

In April of 2002, A.D.Q.'s teacher, Sue Estep, indicated in a school activity report that the child, who was in the third grade at the time, functioned at the second grade level. (R. 142.) Estep reported that the child does well if taught one on one

and is very well behaved, but has a low attention span of only fifteen to twenty minutes. (R. 142-44). Estep concluded that the child has a small learning disability that slows her learning pace. (R. 145.)

On May 11, 2002, Dorothy Holian, Psy. D., examined A.D.Q. The child's mother told Dr. Holian that A.D.Q. attends learning disability classes for math and spelling, has friends at school, has no history of behavioral problems, helps with household chores, and enjoys riding her bike and other physical activities. (R. 173.) Dr. Holian found that the child had moderate loss of attention and concentration, below average ability in memory, age-appropriate motor skills, and cognitive ability below her stated age. (R. 174.) Dr. Holian concluded that A.D.Q.'s intellectual functioning appeared just below average and that her environment did not appear to be intellectually stimulating or supportive. (R. 175.) Accordingly, Dr. Holian recommended special classes that encourage her participation and a special curriculum to meet her academic needs. (*Id*.) Dr. Holian noted that there was no evidence of pathological depression, anxiety, mood, or thought disorder. (*Id*.)

In August of 2002, the child's fourth grade special education teacher, Penny Lynn Jennell, indicated that the child's social development was adequate. (R. 138.) Jennell noted that the child got along well with her peers, could initiate and maintain age-appropriate relationships, and could function in a group or team setting. (*Id*.)

Jennell also reported that the child responded well to authority. (*Id*.) Jennell explained that the child had a problem with attention because she was usually thinking about what she wanted to tell the teacher about events at home rather than the task at hand. (R. 139.) Jennell estimated that the child's attention span was approximately fifteen minutes and noted that the she is easily distracted in the classroom because she is too busy paying attention to others. (*Id*.)

On June 28, 2003, Nurse Practitioner Walden Davis reported that A.D.Q. had a learning disability resulting in moderate limitation in cognitive and communicative function. (R. 240.) Nurse Davis found that the child's motor function and personal function were within normal limits, but assessed marked limitation in social function based on a finding of problems interacting with other children and frequent fits of anger. (R. 240-241.) Nurse Davis also concluded that the child had moderate limitation in concentration, persistence, or pace, based on a finding of a constant flight of ideas and poor retention of reading material. (R. 241.)

The child's report card for the period of August 15, 2003, through September 26, 2003, indicates that she missed two out of thirty days of school and received satisfactory grades in art, computer, physical education, and writing. (R. 242.) The report card indicated below grade level functioning in language arts, math, and reading. (*Id*.)

A.D.Q.'s mother testified at the hearing before the ALJ that A.D.Q. is very rowdy and restless, has difficulty sitting still, and has a hard time sleeping. (R. 248-249.) She stated that the child has good days and bad days with respect to getting along with other children and that she has to meet with the teachers at least once a month. (R. 250.) A.D.Q.'s mother further stated that A.D.Q. had asthma when she was younger and is currently on antibiotics for her lungs about every two months, suffers from migraines and ADHD, and is a slow learner. (R. 248, 253-55.) The child also testified at the hearing, stating that she has best friends at school, enjoys watching television, and sometimes likes to read. (R. 267-68).

Dr. Warren, the medical expert witness, testified that the evidence in the record establishes a diagnosis of ADHD and a mild to moderate learning disability. (R. 272.) He opined that the impact from the impairments is less than marked in acquiring and using information and attending and completing tasks. (R. 273.) Dr. Warren further explained that, due to the history of asthma, the child has a less than marked limitation in health and physical well-being. (R. 274.) He also noted that the child has no significant limitation in interacting and relating with others, moving about and manipulating objects, and caring for herself. (*Id*.)

State agency medical experts, Julie Jennings, Ph.D., and Hugh Tenison, Ph.D., evaluated the plaintiff's claim and concluded that although the combination of the

child's learning disability and ADHD is severe, it does not meet, medically equal, or functionally equal a listed impairment. (R. 179.) In determining whether the A.D.Q.'s impairments constituted the functional equivalent of a listed impairment, the state agency physicians considered the six applicable domains of functioning. (R. 181-82.) The doctors concluded that the child had less than marked limitations in the "acquiring and using information" and "attending and completing tasks" domains, and no limitations in the other four applicable domains. (*Id.*)

Based upon this evidence, the ALJ determined that although the child's ADHD, learning disorders, and history of asthma are severe, these impairments did not meet or medically equal a listed impairment under the regulations. (R. 24.) The ALJ further found that the child's impairments did not constitute the functional equivalent of a listed impairment because the child did not have two "marked" or one "extreme" limitation in any areas of functioning. (*Id.*) Accordingly, the ALJ concluded that the A.D.Q. was not under a disability and was not eligible for SSI under the Act.

## III. Analysis.

The plaintiff argues that the ALJ erred in her determination that the child's impairments did not functionally equal a listed impairment under the regulations. Specifically, the plaintiff contends that the record indicates that A.D.Q. has at least

marked impairment in two of the six domains of functioning and is thus disabled. I find the plaintiff's argument unpersuasive.

In order to qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(C)(i). However, a child cannot be considered disabled even if she meets this requirement if she is engaged in substantial gainful activity. *Id.* at § 1382c(3)(C)(ii). Pursuant to this statutory mandate, the Social Security Administration has set forth a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. *See* 20 C.F.R. § 416.924.

First, the ALJ must determine whether the child is engaged in "substantial gainful activity." *Id.* at § 416.924(b). Second, if the child is not engaged in a substantial gainful activity, the ALJ must determine whether the child's impairment or combination of impairments is "severe." *Id.* at § 416.924(c). If a child's impairment or combination of impairments is so "slight" that it causes no more than minimal functional limitations, then the child does not have a "severe" impairment

Case 1:04-cv-00072-JPJ-PMS   Document 20   Filed 11/21/05   Page 9 of 16   Pageid#: 55

and is not disabled. *Id*. If the ALJ finds that the child's impairment is severe, the analysis proceeds to the third step in the three-step sequential evaluation.

At step three of the analysis, the ALJ must consider whether the impairment "medically equals" or, as is relevant here, "functionally equals" an impairment listed in the regulations. *Id*. at § 416.924(c)-(d); *Id*. at pt. 404. If the child does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, she will be found "not disabled." *Id*. § 416.924(d). In considering whether a child's impairment or combination of impairments is the functional equivalent of a listed impairment, the ALJ considers the effect that the impairment or impairments have on the child's functioning in six specified domains. *Id*. § 416.926a. The six domains set forth in the regulations are:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for yourself; and,
> (vi) Health and physical well-being.

*Id*. at § 416.926a(b)(1)(i)-(vi).

In order to demonstrate that an impairment or combination of impairments functionally equals a listed impairment, a child must exhibit a "marked" limitation in two of the six domains of functioning or an "extreme" limitation in one domain. *Id*.

-10-

at § 416.926a(a). A child has a "marked limitation" in a domain if her impairment or combination of impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. at 416.926a(e)(2)(i). In contrast, a child has an "extreme limitation" in a domain if her impairment or combination of impairments "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. at § 416.926a(e)(3)(i).

In her opinion, the ALJ first determined that A.D.Q. was not engaged in substantial gainful activity during the relevant period. The ALJ then found that the combination of the child's ADHD, learning disorder, and history of asthma was "severe" within the meaning of the regulations but did not meet, equal, or functionally equal the listed impairments under the regulations. In determining that the child's impairments were not the functional equivalent of a listed impairment, the ALJ evaluated the effect of A.D.Q.'s impairments on each of the six domains of functioning and found that the child did not have two "marked" or one "extreme" limitation in any domain. I find that the ALJ's determinations with respect to each domain are supported by substantial evidence; therefore, I must uphold the denial of SSI benefits. *See* 42 U.S.C.A. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

-11-

In evaluating the "acquiring and using information" domain, the ALJ considers how well the child acquires or learns information and how well she uses the information she learns. 20 C.F.R. § 416.926a(g). The ALJ concluded that A.D.Q. has less than marked impairment in this domain, and substantial evidence in the record supports this conclusion. First, testing on May 16, 2001, revealed that A.D.Q. has a full scale IQ score of 88, which falls within the Low Average range of intellectual abilities and indicates that she is functioning intellectually at a level equal to or better than approximately twenty-one percent of children the same age. (R. 156.) School psychologist Lester concluded that A.D.Q. experienced only mild difficulty performing at a level consistent with her peers on academic tasks. Teacher Estep concluded that the child has a small learning disability that slows her learning pace, but noted that she does well if taught one on one. Additionally, Dr. Holian concluded that the child's intellectual functioning appeared just below average. Given that a "marked limitation" is "more than moderate," the ALJ's determination that the child's limitations in this domain are less than marked is reasonable. *See id.* § 416.926a(e)(2)(i).

The ALJ next found that A.D.Q. had less than marked impairment in the "attending and completing tasks" domain. In evaluating this domain, consideration is given to how well the child is able to focus and maintain attention, and how well

they begin, carry through, and finish their activities. *Id*. at § 416.926a(h). Evidence in the record shows that the child's ADHD impairment causes her to have a low attention span with episodes of frequent daydreaming, but two state agency physicians and an impartial medical expert all concluded that A.D.Q.'s limitation in this area is less than marked. Additionally, both Dr. Holian and Nurse Davis found that the child only had a moderate loss of attention and concentration. Thus, I find that substantial evidence supports the ALJ's finding that A.D.Q.'s problems with concentration, persistence, and pace are less than marked.

The ALJ found that A.D.Q. does not have any limitation in the "interacting and relating with others" domain. With respect to this domain, consideration must be given to how well the child initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects the possessions of others. *Id*. at § 416.926a(i). Substantial evidence in the record supports the ALJ's conclusion that A.D.Q. is not limited in this domain. Reports from teachers Estep and Jennel indicate that the child gets along with her peers, initiates and maintains age-appropriate relationships, and functions appropriately in group settings. Dr. Holian found no evidence of pathological depression, anxiety, mood, or thought disorder, and Drs. Warren, Jennings, and Tenison all found that the child had no significant limitation

in interacting and relating with others. The child herself testified that she had best friends at school. The child's mother's testimony suggested that A.D.Q. did not get along with her friends, but this contradicts her prior statements to Dr. Horian that the child has no history of fighting with her peers or behavioral problems at school. Although Nurse Davis opined that the child had a marked limitation in this domain, this opinion is not supported by other substantial evidence in the record and should thus be accorded significantly less weight. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Therefore, although there is some conflicting evidence with respect to this domain of functioning, I find that the ALJ's determination that A.D.Q. is not limited in this area is supported by substantial evidence.

The ALJ also found that the child does not have any limitation in either the "moving about and manipulating objects" domain or the "caring for yourself" domain. Both of these determinations are supported by substantial evidence from the record. Nothing in the record indicates that the child has difficulty in the "moving about and manipulating objects" domain, which focuses on the child's motor skills. *Id*. at § 416.926a(j). Indeed, the child's mother admits that A.D.Q. likes to bike ride, scooter ride, jump on the trampoline, ride a four-wheeler, and care for her animals. Furthermore, reports from A.D.Q.'s teachers indicate that she attends regular physical education classes. Evidence in the record also demonstrates that the child is not

-14-

Case 1:04-cv-00072-JPJ-PMS   Document 20   Filed 11/21/05   Page 14 of 16   Pageid#: 60

limited in the "caring for yourself" domain, which focuses on how well the child maintains a healthy emotional and physical state. *Id*. at § 416.926a(k). A.D.Q.'s mother has not alleged any restrictions in A.D.Q.'s ability to be independent in her daily activities, and the records from school do not suggest any deficit in this domain.

Lastly, the ALJ concluded that A.D.Q.'s limitations in the "health and physical well-being" domain were less than marked. In evaluating this domain, consideration must be given to the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the child's functioning. *Id*. at § 416.926a(l). Accordingly, the ALJ considered the cumulative effect of A.D.Q.'s history of asthma, ADHD, and learning delays. In finding that these impairments did not result in a marked limitation in the child's well-being, the ALJ noted that, although the child was hospitalized twice in 2002, no residual limitations or restrictions result from those acute episodes. Additionally, the report card in the record indicates that A.D.Q. only missed two out of thirty days of school, and other evidence shows that she enjoys physical activities. Therefore, I find that the ALJ's determination that the child's limitations in this domain are not marked is reasonable.

Because I find that the ALJ's decisions with respect to each of the six domains of functioning were supported by substantial evidence from the record, I also find that the ALJ's ultimate determination that the child does not have two "marked" or one

-15-

"extreme" limitation in any domain is reasonable. The plaintiff argues that the reports from Dr. Holian and Nurse Davis indicate that the child has at least a marked impairment in two of the six domains, but this argument is without merit. Dr. Holian did not conclude that the child has a marked limitation in any domain. At most, Dr. Holian found that the child had a moderate limitation in concentration. Nurse Davis concluded that the child had a marked limitation in social functioning, but this opinion is contradicted by other substantial evidence in the record. Furthermore, a marked limitation in only one of the six domains is insufficient to support a finding of disability. Therefore, I find that the ALJ's conclusion that the child is not disabled and accompanying denial of SSI benefits is reasonable.

## IV. Conclusion.

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted and an appropriate final judgment will be entered.

DATED: November 21, 2005

/s/ JAMES P. JONES
Chief United States District Judge

-16-

Case 1:04-cv-00072-JPJ-PMS   Document 20   Filed 11/21/05   Page 16 of 16   Pageid#: 62